## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____


TRUE THE VOTE, INC.,

                    Plaintiff,

     v.

ERYN K. WINTZ, IN HER OFFICIAL
CAPACITY AS MINERAL COUNTY
CLERK AND RECORDER

                    Defendant.

---

## COMPLAINT

---

      Plaintiff, by its attorneys, brings this action for violations of Section 8 of the National Voter Registration Act of 1993 (hereafter, "NVRA"), 42 U.S.C. §1973gg-6, *et. seq*.

      1.      Plaintiff seeks declaratory and injunctive relief to compel Defendant's compliance with Section 8 of the NVRA. Specifically, Defendant has violated Section 8 by failing to make a reasonable effort to conduct voter list maintenance programs in elections for federal office and by failing to produce records and data related to those efforts, as required by Section 8. Plaintiff seeks injunctive relief ordering Defendant to permit inspections of election records pursuant to 42 U.S.C. §1973gg-6(i)(1).  Plaintiff also seeks a declaration and an injunction requiring Defendant to conduct and execute effective voter list maintenance programs in a manner that

results in compliance with federal law. Finally, Plaintiff seeks a declaration and an injunction

suspending the enforcement in Mineral County of portions of Colorado's Voter Access and

Modernized Elections Act of 2013 ( hereafter, "VAMEA") because it's enforcement in Mineral

County will exacerbate and intensify the violations of  42 U.S.C. §1973gg-6(i)(1).


### Jurisdiction and Venue

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331, as the

action arises under the laws of the United States. This Court also has jurisdiction under 42 U.S.C.

§1973gg-9(b)(2), as the action seeks injunctive and declaratory relief under the NVRA.

3.      Venue in this Court is proper under 28 U.S.C. §1391(b) because a substantial part

of the events or omissions giving rise to these claims occurred in the Federal District of

Colorado.

### Plaintiff True the Vote

4.      Plaintiff True the Vote, Inc., ("Plaintiff True the Vote") is a non-profit

organization that seeks to restore truth, faith, and integrity to local, state, and federal

elections.  Plaintiff True the Vote brings this action in its corporate capacity and also on behalf of

organizational supporters who are registered to vote in the State of Colorado and in Mineral

County.

5.      Plaintiff True the Vote regularly obtains official lists of registered voters from

States across the nation, including the State of Colorado, and uses these lists to conduct programs

in furtherance of Plaintiff True the Vote's mission of restoring truth, faith, and integrity to local,

state, and federal elections.  Because Plaintiff True the Vote makes use of these lists in

conducting its various programs, it relies on States, including the State of Colorado, to provide lists that are reasonably accurate and current and reasonably maintained.

6.    One such program of Plaintiff True the Vote analyzes and verifies official lists of registered voters in Colorado to detect errors in those lists.  More specifically, Plaintiff True the Vote trains volunteers to review voter lists and compare those lists to other publically available data.  When a volunteer identifies registrations that appear to be duplicates or registrations of persons who are deceased, have relocated, or are otherwise ineligible to vote in a particular jurisdiction, those registrations are flagged and complaints are filed with appropriate elections officials.  The goal of this particular program is to improve the accuracy and currency of voter lists above and beyond the minimum requirements of the law.  This program is one of the largest of all of Plaintiff True the Vote's various programs and is an essential and integral part of Plaintiff True the Vote's mission.

7.    As part of its voter list verification program, Plaintiff True the Vote obtained voter lists from the State of Colorado, recruited and trained volunteers to analyze and verify these lists, and began the process of analyzing and verifying them.

8.    The failure of the Defendant to satisfy its voter list maintenance obligations under Section 8 of the NVRA has injured and continues to injure Plaintiff True the Vote.  Because the Defendant has failed to satisfy its voter list maintenance obligations, the voter lists that Plaintiff True the Vote obtained from the State of Colorado are inaccurate and out of date, making it more difficult for Plaintiff True the Vote to use these lists in furtherance of its mission than it would have been if the Defendant had satisfied its voter list maintenance obligations under Section 8 of the NVRA.  Plaintiff True the Vote has suffered an injury as a result.

9.      In addition, the failure of the Defendant to satisfy its voter list maintenance obligations under Section 8 of the NVRA has injured and continues to injure Plaintiff True the Vote by impairing Plaintiff True the Vote's ability to achieve an essential and integral part of its mission, namely, its voter list verification program.  Plaintiff True the Vote's voter list verification program relies on county election registrars to conduct the reasonable voter list maintenance programs and activities required by Section 8 of the NVRA.  The goal of Plaintiff True the Vote's voter list verification program is to improve the accuracy and currency of voter lists above and beyond the minimum requirements of the law.  Plaintiff True the Vote's not-for-profit, volunteer efforts supplement the voter list maintenance programs and activities required of the States under Section 8 of the NVRA, but they cannot duplicate or replace the States' taxpayer-funded voter list maintenance programs and activities.  Because the Defendant has failed to satisfy its voter list maintenance obligations under Section 8 of the NVRA, Plaintiff True the Vote is impaired in its ability to carry out its voter list verification program successfully and is injured as a result.

10.      Moreover, the Defendant's failure to satisfy its voter list maintenance obligations under Section 8 of the NVRA also has injured and continues to injure Plaintiff True the Vote by causing it to divert resources away from other programs in order to devote those same resources to its voter list verification program.  For example, among its various programs to restore election integrity, Plaintiff True the Vote trains and mobilizes volunteers to work as election monitors.  As part of this program, Plaintiff True the Vote creates instructional videos to recruit election monitors, holds training sessions and produces reference guides to educate election monitors, and directs volunteers who wish to serve as election monitors to appropriate channels.

Because the Defendant failed to satisfy the voter list maintenance obligations under Section 8 of the NVRA, Plaintiff True the Vote has had to expend more of its scarce resources on programs such as its election monitoring program in order to expend more resources on its voter list verification program.

## Defendant Wintz

11.     The Defendant, Wintz, is the Clerk and Recorder of Mineral County, an office created by Colorado Revised Statutes (C.R.S.) 30-10-401.

12.     Multiple Colorado statutes vest power in the Defendant to maintain voter rolls and place responsibility on the Defendant to ensure that only eligible voters are on the rolls.  These Colorado statutes include: C.R.S. 1-1-110(3) that designates the Defendant as the chief election officer for Mineral County; C.R.S. 1-2-216.5 that requires the Defendant to maintain correct address information for voters based on United States Postal service data;  C.R.S. 1-2-602(4) that gives the Defendant power to maintain the voter rolls by the removal of deceased voters;  C.R.S. 1-2-301(2)(a) that requires the Defendant to maintain voter registration information; C.R.S. 1-2-604 that requires the Defendant to examine statewide databases of voters and generate a list containing the names of electors who are registered in multiple locations and take steps to commence cancellation of duplicate registrations;  C.R.S. 1-2-605 that gives the Defendant power to conduct a countywide mailing of cards to confirm the accuracy of voter registration information; and, C.R.S. 1-2-606(3) that requires the Defendants to cancel the registration of certain convicted felons.

## Defendant's Violations of the NVRA

13.     Defendant has a federal obligation to maintain accurate and current voter rolls which only contain the names of eligible voters residing in Mineral County. Federal law requires "local election officials [to] perform list maintenance with respect to the computerized [state] list on a regular basis." 42 U.S.C. §15483(a)(2)(A). Moreover, Section 8 of NVRA requires Defendant to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of – (A) the death of the registrant; or (B) a change in the residence of the registrant . . ." 42 U.S.C. §1973gg-6(a)(4). Local election officials such as the Defendant are specifically obliged to carry out these list maintenance duties and remove ineligible voters from the rolls pursuant to 42 U.S.C. §1973gg-6(d)(3).

14.     Section 8 of the NVRA also requires that Defendant shall "complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters." 42 U.S.C. §1973gg-6(c)(2)(A). Section 8 of the NVRA mandates that any such list maintenance programs or activities "shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965 (42 U.S.C. §1973 *et seq.*)." 42 U.S.C. §1973gg-6(b)(1).

15.     Also pursuant to Section 8 of the NVRA, Defendant "shall maintain for at least 2 years and shall make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters . . . ." 42 U.S.C. §1973gg-6(i).

16.     Voter rolls maintained by the Defendant for Mineral County contain more voters registered to vote than citizens eligible to vote in Mineral County. In 2013, just after the

November 2012 federal election, Mineral County, Colorado had 836 registered voters, despite having a citizen voting age population of only 610, according to the 2010 United States Census of Population. Therefore, more than 137 percent of living citizens old enough to vote were registered to vote in Mineral County in 2013. Defendant is responsible for allowing this circumstance to occur. By failing to implement a program which takes reasonable steps to cure these circumstances, Defendant has federal list maintenance statutes, including those in the NVRA.

17.     The failure of the Defendant to comply with its obligations under federal voter registration laws has undermined the confidence of properly registered voters in the integrity of the voter registration rolls and, accordingly, in the integrity of elections held in the State of Colorado.

18.     In a July 10, 2013, notice letter, Plaintiff True the Vote, on its own behalf, and on behalf of members and supporters of Plaintiff True the Vote who are registered to vote in the State of Colorado sent a statutory notice letter to the Defendant's predecessor in interest, Eryn Follman, former Mineral County Clerk, notifying her that Plaintiff True the Vote believes that Defendant was in violation of federal voter registration laws. The letter explained that, according to 2010 Census of Population, information and publicly available voter registration data, Mineral County was likely violating the NVRA's federal list maintenance obligations because of a failure to properly maintain the rolls.

19.     The July 10, 2013, notice letter also sought a variety of publicly available information which would likely indicates whether the Defendant was in compliance with federal list maintenance responsibilities, including NVRA. Among the data requested were current

registration data, the numbers of voters purged pursuant to maintenance obligations, the number of notices sent to inactive voters, the number of voters removed due to criminal conviction, and the most recent number of registered voters.

20.     The July 10, 2013, notice letter also requested that the Defendant make available for public inspection all records concerning "the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency" of official lists of eligible voters, explaining that the Defendant was required to make such records available under 42 U.S.C. § 1973gg-6(i)(1).

21.     The July 10, 2013, notice letter also notified Defendant that a lawsuit may be brought against them to ensure compliance with the NVRA's requirements.

22.     The Defendant never responded to the July 10, 2013, notice letter.

## COUNT I

### (Violation of the NVRA: Failure to Conduct List Maintenance)

23.     Plaintiff realleges paragraphs 1 through 22 as if fully stated herein.

24.     Defendant has failed to make reasonable efforts to conduct voter list maintenance programs, in violation of Section 8 of NVRA, 42 U.S.C. §1973gg-6.

25.     Plaintiff has suffered an irreparable injury as a direct result of Defendant's violation of Section 8 of the NVRA. Defendant's failure to comply with the NVRA has aggrieved plaintiff by impairing its essential and core mission of fostering compliance with federal election laws, promotion of election integrity and avoiding vote dilution when ineligible voters participate in elections.

26.     Plaintiff's members and supporters in Colorado will continue to be injured by Defendant's violations of Section 8 of the NVRA because confidence in the legitimacy of elections in Colorado will be undermined and burden their right to vote unless and until Defendant is enjoined from continuing to violate the law.

27.     Plaintiff has no adequate remedy at law.

## COUNT II

### (Violation of the NVRA: Failure to Produce Records and Data)

28.     Plaintiff realleges paragraphs 1 through 22 as if fully stated herein.

29.     Defendant has failed to respond to Plaintiff's written request for data, and failed to produce or otherwise failed to make records available to Plaintiff concerning Defendant's implementation of programs and activities for ensuring the accuracy and currency of official lists of eligible voters for Mineral County, in violation of Section 8 of the NVRA, 42 U.S.C. §1973gg-6.

30.     Plaintiff has suffered an irreparable informational injury as a direct result of Defendant's violation of Section 8 of the NVRA because the Plaintiff does not have the data and records requested. The NVRA confers upon Plaintiff a statutory right to information and by denying that information to Plaintiff, Defendant caused a concrete injury to Plaintiff.

31.     Plaintiff will continue to be injured by Defendant's violations of Section 8 of the NVRA unless and until Defendant is enjoined from continuing to violate the law.

32.     Plaintiff has no adequate remedy at law.

## COUNT III

### (Enforcement of VAMEA Aggravates and Intensifies NVRA Violations)

33.     Plaintiff realleges paragraphs 1 through 22 as if fully stated herein.

34.     Enforcement of VAMEA has aggravated the violations of the NVRA. Enforcement of VAMEA has damaged the integrity of Colorado elections by requiring that regular ballots are automatically mailed, without any request, to voters in Mineral County who are *per se* ineligible to vote, have died, or have moved their permanent residence out of Mineral County.  Without adequate list maintenance by Defendant and vigorous compliance with the NVRA, the VAMEA has created a circumstance where regular ballots are sent to addresses where the eligible voters no longer reside.  VAMEA has multiple provisions which aggravate and intensify the NVRA violations alleged in this Complaint.

35.     First, VAMEA required the reclassification of all "inactive" voters to "active" status by August 1, 2013.  (C.R.S. 1-2-229).  This reclassification had a devastating effect on proper and reasonable list maintenance in Mineral County and across Colorado.  Some voters had been placed on inactive status for objections and sound reasons based on reasonable list maintenance practices.  The placement on inactive status was based on objective data which indicated that a particular registration may no longer represent a valid living registrant residing at that particular registered address.  Indeed, commencing the beginning phases of the process to remove potentially ineligible registrants is "necessary in order to provide for the purity of elections and to guard against abuses."  *See eg.*, *Duprey v. Anderson,* 518 P.2d 807, 809 (Colo. 1974). VAMEA's termination of the inactive category and conversion of all active voters to inactive status seriously aggravated already deficient list maintenance activities in Mineral County.

36.     Second, VAMEA abandoned in-person voting by precinct which has characterized Colorado elections since the Colorado Constitution was adopted in 1876.  Instead, VAMEA adopted an all-mail election system.  (C.R.S. 1-5-401).  Further aggravating the NVRA violation, the VAMEA mandated the automatic mailing of a regular ballot to *all registered addresses, whether or not a voter requested a ballot.*  (C.R.S. 1-7.5-107(3)).  Such a practice is wholly unprecedented in American history.  Adoption of the all-mail election system has the practical effect of mailing significant numbers of ballots to individuals or addressees where the voter no longer lives, has lost eligibility to vote, or has died.  These mailings will aggravate the NVRA violation in Mineral County.

37.     Plaintiff has no adequate remedy at law.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for a judgment:

1.     Declaring that Defendant is in violation of Section 8 of the NVRA;

2.     Enjoining the Defendant from failing or refusing to comply with the voter registration list maintenance requirements of Section 8 of the NVRA in the future and ordering the Defendant to conduct reasonable list maintenance activities;

3.     Enjoining the Defendant from failing to comply with the public inspection rights under Section 8 of the NVRA allowing inspection of registration information;

4.     Enjoining the Defendant from enforcing VAMEA's provisions requiring the reclassification of inactive to active voters and the automatic mailing of ballots to Mineral

County voters until such time as Defendants conduct reasonable list maintenance activities and identify ineligible voters on Mineral County rolls.

     5.      Ordering the Defendant to pay Plaintiff's reasonable attorney's fees, including litigation expenses and costs, pursuant to 42 U.S.C. §1973gg-9(c); and

     6.      Granting Plaintiff further relief that this Court deems just and proper.


Dated: December 12, 2013                Respectfully submitted,


                                      /s/ Jessica K. Peck
                                      Jessica K. Peck, Esq.
                                      Colo. Reg. #41299
                                      The Peck Law Firm, LLC
                                      1616 Seventeenth Street
                                      Suite 576
                                      Denver, Colorado 80202
                                      (720) 628-5756
                                      Jessica@JPDenver.com


J. Christian Adams                 H. Christopher Coates
ELECTION LAW CENTER, PLLC.      Law Office of H. Christopher Coates
300 N. Washington Street, Ste. 405     934 Compass Point
Alexandria, Virginia 22314          Charleston, South Carolina 29412
(703) 963-8611                    (843) 609-7080
adams@electionlawcenter.com      curriecoates@gmail.com
*Application to District of Colorado to be filed*     *Application to District of Colorado to be filed*

                                      Attorneys for Plaintiff